Case No. 16-15469

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NARUTO, by and through his Next Friend,

*Plaintiff-Appellant*,

v.

DAVID J. SLATER, WILDLIFE PERSONALITIES, LTD., and BLURB, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court
For the Northern District of California
Hon. William H. Orrick
Case No. 3:15-cv-04324-WHO

## ANSWERING BRIEF OF APPELLEE BLURB, INC.

Jessica Valenzuela Santamaria (220934) (jsantamaria@cooley.com)
Angela L. Dunning (212047) (adunning@cooley.com)
Kyle C. Wong (224021) (kwong@cooley.com)
Jacqueline B. Kort (284370) (jkort@cooley.com)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel.: (650) 843-5000
Fax: (650) 849-7400

*Attorneys for Defendant-Appellee Blurb, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Blurb, Inc., certifies that Blurb, Inc., has no parent corporation and no publicly held corporation owns Blurb, Inc., stock.

Dated: August 29, 2016        COOLEY LLP

By: <u>/s/ Jessica Valenzuela Santamaria</u>
Attorneys for Defendant-Appellee
Blurb, Inc.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUE FOR REVIEW .......................................................1

STATEMENT OF THE CASE................................................................................1

STATEMENT OF FACTS ......................................................................................3

SUMMARY OF ARGUMENT ...............................................................................5

STANDARD OF REVIEW .....................................................................................7

ARGUMENT ..........................................................................................................7

I.      PETA LACKS "NEXT FRIEND" STANDING TO SUE............................7

II.     THE DISTRICT COURT'S DISMISSAL SHOULD BE AFFIRMED AS PLAINTIFF LACKS STATUTORY STANDING...............................10

      A.     The Plain Language Of The Copyright Act Does Not Confer Statutory Standing On Animals. ......................................10

      B.     Case Law Does Not Support Finding Statutory Standing Here.........15

      C.     The District Court Properly Relied on the Compendium ..................20

III.    THE COURT SHOULD DISREGARD THE AMICUS BRIEF BY AGUSTIN FUENTES. ...........................................................................25

CONCLUSION......................................................................................................27

STATEMENT OF RELATED CASES ..................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aalmuhammed v. Lee*,
 202 F.3d 1227 (9th Cir. 2000) ...........................................................19

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
 747 F.3d 673 (9th Cir. 2014) ............................................................22

*Arizonans for Official English v. Arizona*,
 520 U.S. 43 (1997) ...........................................................................8, 9

*Bartok v. Boosey & Hawkes, Inc.*,
 523 F.2d 941, 947 (2d Cir. 1975) ......................................................24

*Batjac Prods. Inc. v. Goodtimes Home Video Corp.*,
 160 F.3d 1223 (9th Cir.1998) ...........................................................22

*Bleistein v. Donaldson Lithographing Co.*,
 188 U.S. 239 (1903).........................................................................25

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*,
 360 F. Supp. 2d 655 (M.D. Pa. 2005)................................................23

*Brewer v. Lewis*,
 989 F.2d 1021 (9th Cir. 1993) .............................................................9

*Burrow-Giles Lithographic Co. v. Sarony*,
 111 U.S. 53 (1884).............................................................19, 20, 22

*Burwell v. Hobby Lobby Stores, Inc.*,
 134 S. Ct. 2751 (2014).....................................................................14

*Cetacean Cmty. v. Bush*,
 386 F.3d 1169 (9th Cir. 2004) ....................................................*passim*

*Christensen v. Harris Cty.*,
 529 U.S. 576 (2000)..........................................................................21

*Citizens United v. Fed. Election Comm'n*,
 558 U.S. 310 (2010)..........................................................................14

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ...................................................................... 19

*Coal. of Clergy, Lawyers, and Professors v. Bush*,
  310 F.3d 1153 (9th Cir. 2002) ..................................................... 8, 10

*Davis v. Mich. Dep't of Treasury*,
  489 U.S. 803 (1989) ...................................................................... 13

*Dennis v. Budge*,
  378 F.3d 880 (9th Cir. 2004) ........................................................... 8

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ........................................................ 25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) ...................................................................... 24

*Flast v. Cohen*,
  392 U.S. 83 (1968) ........................................................................ 16

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ......................................................... 23

*Gomez-Perez v. Potter*,
  553 U.S. 474 (2008) ...................................................................... 16

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ....................................................... 16

*Hawaiian Crow ('Alala) v. Lujan*,
  906 F. Supp. 549 (D. Haw. 1991) ..................................................... 8

*Hollingsworth v. Perry*,
  133 S. Ct. 2652 (2013) .................................................................... 7

*Horgan v. Macmillan, Inc.*,
  789 F.2d 157 (2d Cir. 1986) ........................................................... 23

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
  755 F.3d 1038 (9th Cir. 2014) ..................................................... 6, 21

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*,
274 F. 932 (D.N.Y. 1921) ................................................................................25

*Jimenez v. Quarterman*,
555 U.S. 113 (2009) ........................................................................................12

*Karcher v. May*,
484 U.S. 72 (1987) ............................................................................................7

*Kelley v. Chicago Park Dist.*,
635 F.3d 290 (7th Cir. 2011) ....................................................................19, 20

*Lane v. Pena*,
518 U.S. 187 (1996) ........................................................................................16

*Lenhard v. Wolff*,
443 U.S. 1306 (1979) ........................................................................................8

*Los Angeles News Serv. v. Tullo*,
973 F.2d 791 (9th Cir. 1992) ..........................................................................25

*Massie v. Woodford*,
244 F.3d 1192 (9th Cir. 2001) ..........................................................................8

*Meanel v. Apfel*,
172 F.3d 1111 (9th Cir. 1999) .....................................................................7, 25

*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015) ..........................................................................16

*Nichols v. Nichols*,
2011 U.S. Dist. LEXIS 65518 (D. Or. June 20, 2011) .....................................10

*Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania*,
125 U.S. 181 (1888) ........................................................................................14

*Rhoades v. Avon Products, Inc.*,
504 F.3d 1151 (9th Cir. 2007) ..........................................................................7

*Richlin Sec. Co. v. Chertoff*,
553 U.S. 571 (2008) ........................................................................................17

*San Diego County Gun Rights Comm. v. Reno*,
  98 F.3d 1121 (9th Cir. 1996) ............................................................7

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ...........................................................12

*Trade-Mark Cases*,
  100 U.S. 82, 94 (1879)..............................................................22, 23

*United States v. Granderson*,
  511 U.S. 39 (1994)........................................................................12

*United States v. Mitchell*,
  463 U.S. 206, 218-19 (1983) ..........................................................17

*Urantia Foundation v. Maaheraa*,
  114 F.3d 955 (9th Cir. 1997) .....................................................20, 24

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990).........................................................................9

*California ex rel. Younger v. Andrus*,
  608 F.2d 1247 (9th Cir. 1979) ..........................................................8

**Statutes**

1 U.S.C. § 1 ....................................................................................14

16 U.S.C.
  § 1532(13)........................................................................................8
  § 1540(g)..........................................................................................8

17 U.S.C.
  § 101.................................................................................5, 13, 15
  § 203(a)(2)(A).......................................................................5, 13
  § 302(c).........................................................................................15
  § 304(a)(1) ....................................................................................14
  § 501(b)..........................................................................................11
  § 701(b)(2) ......................................................................................6

**Federal Rules**

Ninth Circuit Rule 39.1-1.6 ........................................................5

Fed. R. App. P. 42(b) .................................................................1

Fed. R. Civ. P.
    12(b)(1) ................................................................................7
    12(b)(6) ................................................................................7
    17(c) ....................................................................................8

**United States Constitution**

U.S. Const.
    amend. I ............................................................................14
    amend. XIV .......................................................................14

**Other Authorities**

Copyright Office's *Compendium of the U.S. Copyright Office
    Practices* (3d ed. 2014) ...........................................6, 21, 22

Gregory C. Sisk, *Twilight for the Strict Construction of Waivers of
    Sovereign Immunity*, 92 N.C. L. REV. 1245 (2014) ...........17

Law of the Republic of Indonesia, No. 19, *Copyright*, Art. 1 § 2
    (2002) ................................................................................21

2 William F. Patry, *Patry on Copyright* § 3:19 (2010) ...........19

## STATEMENT OF THE ISSUE FOR REVIEW

Whether Appellant lacks "next friend" standing to bring this appeal on behalf of Naruto the monkey.

Whether the District Court's order granting dismissal for lack of standing should be affirmed.

## STATEMENT OF THE CASE

This is a copyright infringement lawsuit filed on behalf of a monkey. This case concerns a series of photographs (hereinafter, the "Monkey Selfies" or "Selfies") allegedly taken by Naruto, a macaque monkey, on the island of Sulawesi, Indonesia. These Monkey Selfies were published by Appellee David John Slater ("Mr. Slater") in a book created through Appellee Blurb, Inc.'s ("Blurb") website, which enables users to create and self-publish their own bookstore-quality books. Following publication, the initial action was brought by Naruto's "next friends," People for the Ethical Treatment of Animals ("PETA") and Dr. Antje Engelhardt ("Dr. Engelhardt"), a German primatologist and ethologist. After the district court dismissed the case for lack of statutory standing, PETA and Dr. Engelhardt appealed. On May 4, 2016, however, Dr. Engelhardt filed a motion to dismiss her appeal under Federal Rule of Appellate Procedure 42(b). Her motion was granted, leaving PETA as the sole "next friend" of

Appellant Naruto. PETA, however, has no standing to pursue claims on behalf of Naruto.

PETA does not claim to have been present when the Selfies were taken or to have any personal knowledge or interest in the subject matter of the suit. Nor does the organization claim any actual relationship with Naruto; it does not allege it has had any personal interaction with him. As a result, PETA does not have a "significant relationship" that is a central requirement for next friend standing and this Court has no jurisdiction to hear the appeal.

Additionally, even were PETA to qualify as a "next friend," Naruto the monkey himself lacks statutory standing to seek copyright protection. While Appellant argues that the Copyright Act permits animals to sue because authorship is not limited to humans, neither the plain language of the Copyright Act nor the jurisprudence interpreting it supports Appellant's argument. Congress must, after all, "make its intention clear before [courts] will construe a statute to confer standing on a particular plaintiff," particularly where it makes the "extraordinary step" of granting animals statutory standing. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). Congress has not extended standing to animals, or expressed any intention to do so. As a result, Naruto lacks standing to sue for copyright protection under binding Ninth Circuit precedent. The lower court's dismissal of this action for lack of standing should be affirmed.

## STATEMENT OF FACTS

Naruto is a male, crested macaque monkey, residing on the Tangkoko Reserve on the island of Sulawesi, Indonesia.[1] (Appellant's Excerpts of Record ("E.R.") at 20, ¶ 1.)  In 2011, Naruto allegedly took the Monkey Selfies using a camera left unattended by Mr. Slater, a professional photographer, during his visit to the Tangkoko Reserve.  (E.R. at 20, ¶¶ 2-3.)  Mr. Slater, a resident of the United Kingdom, and the director and sole shareholder of Appellee Wildlife Personalities, a private limited liability company based in the U.K, published the Monkey Selfies in a book called "Wildlife Personalities."  (E.R. at 20, ¶ 4.)  This book was published through Appellee Blurb's website, which enables users to create and self-publish their own bookstore-quality books.  (Blurb MTD at 2.)  Both Blurb's website, which contains an explicit "Disclaimer," and its "Terms and Conditions" expressly provide that Blurb is not a publisher.  (Blurb MTD at 3; *id.* Exs. 2, 3.)

---

[1] There is a serious question as to whether Naruto took the Monkey Selfies at all. Specifically, the Complaint includes a quote from Mr. Slater's book, in which he describes the animal as female:

> It was only a matter of time before one pressed the shutter resulting in a photo of herself. She stared at herself with a new found appreciation. . . . She also, importantly, made relaxed eye contact with herself. . . . She was certainly excited at her own appearance and seemed to know it was herself.

(E.R. at 26, ¶ 34e.)  Yet, contradicting itself, the Complaint asserts that Naruto is male.  (E.R. at 22, ¶ 14.)  Further, PETA's president, Ingrid Newkirk, publicly referred to the subject of the Monkey Selfies as a "female" crested macaque.  (Def. Blurb's Mem. Supp. Mot. to Dismiss, Case No. 3:15-cv-04324-WHO, Dkt. 24 ("Blurb MTD") at 4.)

Pursuant to the Disclaimer and Terms and Conditions, Blurb's users are the publishers of their own books. (Blurb MTD at 3; *id.* Exs. 2, 3.)

Following publication of "Wildlife Personalities," Appellant PETA and former Appellant Dr. Engelhardt, filed a complaint against defendants Mr. Slater, Wildlife Personalities, Ltd., and Blurb (collectively, "Appellees"), on September 21, 2015 in the Northern District of California as "next friends" of Naruto seeking to hold Appellees liable for infringing Naruto's alleged copyright. (E.R. at 19-31.) Their complaint sought a declaration that Naruto is the author and copyright owner of the Monkey Selfies, an injunction against Appellees' use of the Selfies, an accounting of all proceeds, profits and expenses related to the alleged infringement, disgorgement of such profits and damages as "may be found." (E.R. at 28.)

Appellees moved to dismiss the complaint for lack of standing and failure to state a claim. (Blurb MTD; Def. Slater's Mem. Supp. Mot. to Dismiss, Case No. 3:15-cv-04324-WHO, Dkt. 28.) The case was dismissed and PETA filed this appeal with Dr. Engelhardt, who then successfully sought dismissal from this action. (Appellant's Brief ("Br."); Docket Entry ("Dkt.") 14.) On August 4, 2016,

amicus Agustin Fuentes submitted an amicus brief with the consent of all parties.[2]

(Dkt. 20.)

## SUMMARY OF ARGUMENT

Both Appellant PETA and Naruto lack standing for two principal reasons and therefore cannot pursue this appeal.

First, PETA has not demonstrated any "significant relationship" with Naruto sufficient to confer standing to sue on behalf of the monkey. PETA, in fact, does not offer a single fact or allegation demonstrating *any* contact or ongoing relationship with Naruto. It can no longer rely on Dr. Engelhardt's relationship given that Dr. Engelhardt has voluntarily dismissed her appeal, a fact PETA notably ignored in its opening brief.

Second, in any event, a monkey does not have standing to sue for copyright infringement. The Copyright Act itself does not confer statutory standing on animals. The plain language of the statute not only repeatedly references "persons" and invokes human-only concepts such as widows and grandparents*, see* 17 U.S.C. § 101; 17 U.S.C. § 203(a)(2)(A), but Ninth Circuit precedent also makes clear that animals do not have statutory standing to sue unless such standing is

---

[2] The parties stipulated to defer the issue of attorneys' fees incurred at the district court level until after this appeal is resolved. (E.R. at 8.) Blurb takes no position on Slater's contention (Dkt. 26 at 11-26) that it would be more judicially efficient for the Court to address the appellate attorney fees issue in its merits opinion rather than through the motion procedure of Ninth Circuit Rule 39.1-1.6.

expressly granted by Congress, *Cetacean*, 386 F.3d at 1175.  Because there is no such grant in the Copyright Act, Naruto the monkey does not have standing to file suit.

Moreover, the district court examined the considered decision of the U.S. Copyright Office, charged by law with, *inter alia*, "[p]rovid[ing] information and assistance to Federal departments and agencies and the Judiciary on national and international issues relating to copyright," 17 U.S.C. § 701(b)(2), on this issue.  As stated in the Copyright Office's *Compendium of the U.S. Copyright Office Practices* (3d ed. 2014) ("Compendium"), "[t]o qualify as a work of 'authorship' a work must be created by a human being. Works that do not satisfy this requirement are not copyrightable."  Compendium, § 306.  The Ninth Circuit routinely relies on the Compendium as persuasive authority.  *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041-42 (9th Cir. 2014).  As such, the District Court's reliance on the Compendium was proper.

Finally, nothing in the amicus brief filed by Augustin Fuentes ("Amicus"), a primatologist and Professor of Anthropology, changes the fact that the Copyright Act does not grant animals standing.  The Amicus argues that because Naruto had the capacity to manipulate the camera to achieve a desired effect, he should be considered the author of the Monkey Selfies under the Copyright Act.  The appellate courts are not the proper forum for evidenced-based, scientific arguments

that have not been vetted or considered at the district court level. *Cf. Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("The ALJ, rather than this Court, was in the optimal position to resolve the conflict between Meanel's new evidence and the statistical evidence provided by the VE."). Further, Professor Fuentes effectively asks this Court to draw a bright line rule regarding which animals are intellectually capable of authorship and originality. As indicated by the Copyright Act, Congress has already drawn this line, and determined that animals cannot own copyrights.

## STANDARD OF REVIEW

The district court's grant of Appellees' motions to dismiss is reviewed *de novo. Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007) ("We review *de novo* dismissals under Rules 12(b)(1) and 12(b)(6)."); *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1124 (9th Cir. 1996) ("Standing and ripeness are questions of law, which we review *de novo*.").

## ARGUMENT

## I.  PETA LACKS "NEXT FRIEND" STANDING TO SUE.

An appellant may not pursue an appeal unless it has standing to do so, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013), as grounds for standing can be lost in litigation, presuming it even existed in the first place, *see Karcher v. May*, 484 U.S. 72, 81 (1987). Indeed, standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first

instance." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).

Where the appellant has no standing to appeal, this Court has no choice but to

dismiss the case for lack of jurisdiction. *California ex rel. Younger v. Andrus*, 608

F.2d 1247, 1249 (9th Cir. 1979) (dismissing appeal for lack of standing).

PETA, the sole appellant, claims standing only as the "next friend" of

Naruto. (Br. at 4.) As such, PETA must establish that Naruto "is unable to litigate

on his own cause due to mental incapacity, lack of access to court, or other similar

disability" and that PETA "has some significant relationship with, and is truly

dedicated to the best interests of, the petitioner." *Massie v. Woodford*, 244 F.3d

1192, 1194 (9th Cir. 2001); *see also Dennis v. Budge*, 378 F.3d 880, 888-89 (9th

Cir. 2004) (reciting the significant relationship test); *Coal. of Clergy, Lawyers, and

Professors v. Bush*, 310 F.3d 1153, 1159-60 (9th Cir. 2002).[3] Courts have imposed

these limitations because "however worthy and high minded the motives of next

friends may be, they inevitably run the risk of making the actual defendant a pawn

to be manipulated on a chessboard larger than his own case." *Coal. of Clergy*, 310

F.3d at 1161 (internal quotations omitted) (quoting *Lenhard v. Wolff*, 443 U.S.

---

[3] Notably, PETA can only claim to be a "next friend" under the common law next friend doctrine, as Federal Rule of Civil Procedure 17(c) limits next friends to "persons." *See Hawaiian Crow ('Alala) v. Lujan*, 906 F. Supp. 549, 552 (D. Haw. 1991) ("The court finds the plain language of Rule 17(c) and section 1540(g) does not authorize the 'Alala [bird] to sue. It is clearly neither a 'person' as defined in section 1532(13), nor an infant or incompetent person under Rule 17(c)."); *see also* FED. R. CIV. P. 17(c).

1306, 1312 (1979) (Rehnquist, Circuit Justice)); *Arizonans for Official English*, 520 U.S. at 64-65 (cautioning against standing where "concerned bystanders" might use a plaintiff and her suit "as a vehicle for the vindication of value interests") (internal quotations omitted). Essentially, "[t]he burden is on the 'next friend' [to] clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990); *Brewer v. Lewis*, 989 F.2d 1021, 1026 (9th Cir. 1993).

Nowhere in the Complaint or briefing does PETA allege it ever had a significant relationship with Naruto. It is at best unclear whether PETA actually has any connection to Naruto whatsoever. While Dr. Engelhardt was a party to the suit, PETA appeared to rely on her potential standing as a primatologist directly working with Naruto to establish the close relationship that PETA lacks.[4] Indeed, PETA's opening brief merely reasserts Dr. Engelhardt's connection and states that they both share "a commitment and dedication to Naruto and the preservation of both his habitat and his rights." (Br. at 4.) But, Dr. Engelhardt dismissed her appeal and with it, PETA's ability, if any, to piggyback off of her purported relationship with Naruto. PETA has, simply put, failed to demonstrate any

---

[4] PETA also relied on Dr. Engelhardt to identify Naruto (Br. at 4), suggesting that without Dr. Engelhardt, PETA could not even identify Naruto from the other monkeys in the sanctuary. Indeed, PETA's President has repeatedly referred to Naruto as "she," contradicting the Complaint's claim that Naruto, a male macaque, took the picture at issue. (Blurb MTD at 4.)

connection or relationship to Naruto.  *Coal. of Clergy,* , 310 F.3d at 1161-62 (no

standing for party who failed to make "any effort to even communicate" with their

"next friend").  There may be no cause to doubt PETA's sincerity here, but the

facts alleged do not show that PETA has ever met Naruto, much less established

the close relationship this Court's precedents demand.[5]  As such, PETA lacks next

friend standing and this appeal should be dismissed for lack of subject matter

jurisdiction.

## II. THE DISTRICT COURT'S DISMISSAL SHOULD BE AFFIRMED AS PLAINTIFF LACKS STATUTORY STANDING.

### A. The Plain Language Of The Copyright Act Does Not Confer Statutory Standing On Animals.

Even were Appellant able to demonstrate next friend standing (which it

cannot), this Court would still have to determine whether Congress has granted

statutory standing to animals like Naruto.  *Cetacean*, 386 F.3d at 1175 (9th Cir.

2004).  Courts making this determination should not "construe a statute to confer

standing on a particular plaintiff" unless Congress "make[s] its intention clear."

*Id.*

---

[5] PETA's relationship to Naruto does not appear to satisfy any of the exceptions to
next friend standing recognized, or adopted, in the Ninth Circuit.  *See, e.g.*, *Nichols
v. Nichols*, 2011 U.S. Dist. LEXIS 65518, at *14 (D. Or. June 20, 2011) (applying
the *Coalition* court's requirement that a representative have a significant
relationship to the injured party, and finding that "an 'authorized representation'"
through "appointment" could satisfy next friend standing requirements).

As an initial and dispositive matter, the Copyright Act contains no express language authorizing animals to sue or to invoke any of the Act's protections – in fact, it does not mention animals at all. This exclusion is dispositive because if "Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue," they must, as this Court has previously held, "sa[y] so plainly." *Cetacean*, 386 F.3d at 1179 (citation and internal quotations omitted). The Act says no such thing.

What the Copyright Act does say plainly, moreover, is telling. The very provision of the Copyright Act that creates a private cause of action for a copyright "owner" makes repeated mentions of "persons":

> The legal or beneficial owner of an exclusive right under a copyright is entitled…to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon *any person shown,* by the records of the Copyright Office or otherwise, *to have or claim an interest in the copyright*, and shall require that such notice be served upon *any person* whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of *any person* having or claiming an interest in the copyright.

17 U.S.C. § 501(b) (emphasis added). The language is clear: "persons," not animals, may have an interest in copyrights and be notified and participate in lawsuits concerning those copyrights. It would be nonsensical, given the above, to read the word "owner" here broadly to include animals. If an animal could be an "author" as Appellants urge, Congress would have incongruously allowed the

animal to sue under this provision but not to be notified of the lawsuit or be allowed to join or intervene in it because those latter rights are limited to "persons." To hold otherwise would improperly require this Court not only to read "owners" as including animals but the term "persons" as well.[6] *United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (courts should adopt "a sensible construction" of a statute that avoids attributing to the legislature either "an unjust or an absurd conclusion."). "[U]nder traditional principles of statutory interpretation, Congress' explicit listing of who *may* sue for copyright infringement should be understood as an *exclusion of others* from suing for infringement." *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). Thus, the plain language of the statute precludes statutory standing for Appellant. *Id.*; *Cetacean*, 386 F.3d at 1179.

Moreover, other provisions in the Copyright Act further confirm that Congress did not contemplate or intend for animals to have a right to sue. Although the words "author" and "authorship" are not defined in the Act, the law includes numerous references that evince a human-only application under the well-established rules of statutory construction. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins

---

[6] Appellant itself implicitly concedes this point in its opening brief when it acknowledges that the patent statutes define inventors as "persons," thus excluding animals from those laws. (Br. at 9 n.3.)

with the plain language of the statute."); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").  For instance, 17 U.S.C. section 101 defines an author's "widow" or "widower" as the "author's surviving spouse under the law of the author's domicile at the time of his or her death, whether or not the spouse has later remarried."  17 U.S.C. § 101.  Section 203(a)(2)(A) provides that, where an author is deceased, "[t]he widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest." 17 U.S.C. § 203(a)(2)(A).  By defining an author's rights by reference to "widows" and "grandchildren," the Copyright Act invokes concepts that are uniquely human in nature and have no conceivable application to animals, which do not marry, much less have rights to pass on property to a surviving spouse or heirs.

Appellant finds no solace in its argument that since corporations have long enjoyed protection under the Copyright Act, the law recognizes "that not all authors will be human."  (Br. at 12.)  Appellant contends that the Act contemplates protection for non-human authors such as animals because a work created by an employee vests initially with the employer, and employers can be corporations or

other entities. This argument is specious. It wholly ignores the fact that the Copyright Act explicitly acknowledges that corporations can and do own copyrights. *See, e.g.*, 17 U.S.C. § 304(a)(1) ("Any copyright . . . shall endure for 28 years from the date it was originally secured . . . in the case of . . . *any work copyrighted by a corporate body* (otherwise than as assignee or licensee of the individual author) or by an employer for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work for the further term of 67 years.") (emphasis added). Furthermore, the Supreme Court has repeatedly and routinely interpreted corporations and other legal entities to be "persons" under the law. *See, e.g.*, *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888) ("Under the designation of 'person' there is no doubt that a private corporation is included [in the Fourteenth Amendment]. Such corporations are merely associations of individuals . . . ."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 341–42 (2010) (finding that corporations—associations of persons—have speech rights under the First Amendment); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014) (finding word "person" in federal legislation includes corporations and companies, as well as individuals, and so the plaintiff corporation was a person under the Religious Freedom Restoration Act of 1993); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress,

unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, [and] associations . . . as well as individuals"). The same cannot be said for animals. Animals are not persons, and Appellant cites no authority for that proposition.

Appellant also points to provisions in the Copyright Act relating to "anonymous works," but those provisions undermine, rather than support, its position. (Br. at 14 (citing 17 U.S.C. §§ 101, 302(c)).) As Appellant concedes, anonymous works are those for which "*no natural person* is identified as author." (*Id.* (citing 17 U.S.C. § 101) (emphasis added).) In other words, the definition only contemplates a *natural person* as author, who happens to be unidentified. The provision lends no support whatsoever for the idea that an animal (identified or otherwise) can be an author entitled to copyright protection.

**B.    Case Law Does Not Support Finding Statutory Standing Here.**

The plain language of the Copyright Act aside, binding Ninth Circuit case law makes clear that animals do not have statutory standing to sue. In *Cetacean*, the "self-appointed attorney for all of the world's whales, porpoises, and dolphins" filed suit on behalf of these cetaceans for violations of the Endangered Species Act ("ESA"), the Marine Mammal Protection Act ("MMPA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA"). *Cetacean*, 386 F.3d at 1171-72. On review, the Ninth Circuit examined

the language of each statute to assess whether they evinced congressional intent to confer standing on non-humans, and concluded they did not. It concluded as a general matter that animal standing was an "extraordinary step" that only explicit statutory language could create. *Cetacean*, 386 F.3d at 1179. Absent such language, the exclusion of animals should be presumed.

Appellant's attempts to distinguish *Cetacean* are meritless. It first argues that because the statutes at issue in *Cetacean* involved "waiver[s] of the United States' sovereign immunity, and such waivers, unlike the Copyright Act, are narrowly construed," Br. at 11, the *Cetacean* court was constrained to interpret standing narrowly. At no point, however, does the court in *Cetacean* mention "sovereign immunity," let alone discuss the doctrine.[7] Nor does that decision turn on a narrow interpretation of standing since "a waiver of the Government's sovereign immunity will be strictly construed" only as to the waiver itself, *Lane v. Pena*, 518 U.S. 187, 192 (1996), while other statutory language is not subject to the same strict treatment, *see Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (reasoning that "a substantive provision" in a statute does not have to "surmount the same high hurdle" of interpretation as a provision waiving "sovereign

---

[7] Additionally, any sovereign immunity inquiry should come *after* determining whether or not a plaintiff has standing to sue, as standing is a threshold issue, *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009); *see also Flast v. Cohen*, 392 U.S. 83, 106 n.26 (1968). *See also Munns v. Kerry*, 782 F.3d 402 (9th Cir. 2015) (finding a lack of standing prior to, and independently of, determining whether the court lacked authority because of sovereign immunity).

immunity"); *Richlin Sec. Co. v. Chertoff*, 553 U.S. 571, 589-90 (2008) (relying on "traditional tools of statutory construction" to interpret the substantive provisions of a statute waiving sovereign immunity); Gregory C. Sisk, *Twilight for the Strict Construction of Waivers of Sovereign Immunity*, 92 N.C. L. REV. 1245 (2014).

Moreover, contrary to Appellant's assertion, the *Cetacean* court actually construed statutory standing broadly, while still excluding animal plaintiffs, because of the lack of express Congressional intent. In describing how the APA grants standing—and construing the ESA's arguably narrower grant of standing through the "broader" APA provisions—the court "read the underlying statute to grant standing generously, such that 'persons' who are 'adversely affected or aggrieved' are all persons 'arguably within the zone of interests' protected by the underlying statute." *Cetacean*, 386 F.3d at 1178 (internal citation removed). Yet, even with this broad construction, the court declined to grant standing to whales. Likewise, the court also stated that NEPA—which has no explicit grant of standing—had been interpreted "broadly," where courts "have recognized standing for individuals and groups of individuals who sue to require preparation of an EIS [Environmental Impact Study]." *Id.* at 1179. Still, the court did not invent statutory standing where none existed.[8]

---

[8] The *Cetacean* court's broad interpretation of statutory language mirrors the logic applied by the Supreme Court in *United States v. Mitchell*. In *Mitchell*, the Court dealt with how to construe provisions granting substantive rights when they are

Equally unavailing is Appellant's assertion that "the statutes at issue in *Cetacean* actually define who has standing" unlike the Copyright Act. That is simply untrue. While the ESA does state that "persons" are authorized "to sue to protect animals," the MMPA "contains no explicit provision granting standing to enforce its duties." *Cetacean,* 386 F. 3d at 1178 (stating also that "the statute says nothing about the standing of a would-be party, such as the Cetaceans, who seek to compel someone to apply for a letter of authorization, or for a permit"). Likewise, "no provision of NEPA explicitly grants any person or entity standing to enforce the statute, but judicial enforcement of NEPA rights is available through the APA." *Id.* at 1179. Consequently, two of the four statutes at issue in *Cetacean*—and two of the three statutes with a substantive cause of action—do not, as Appellant contends, explicitly define who has standing. Yet the courts did not therefore read those statutes to "effectively exclude everyone," as appellant fears they might with the Copyright Act; the court still managed to afford standing to people and organizations under the "broad" language of the APA. (Br. at 12.)

---

enforced by a statute waiving sovereign immunity (in that case, the Tucker Act) and chose to construe the rights broadly. 463 U.S. 206, 218-19 (1983). It reasoned that "[b]ecause the Tucker Act supplies a waiver of immunity for claims of this nature, the separate statutes and regulations need not provide a second waiver of sovereign immunity, nor need they be construed in the manner appropriate to waivers of sovereign immunity." *Id*. Likewise, the *Cetacean* court was free to interpret standing broadly and independently of a narrowly construed waiver of sovereign immunity. Even in construing standing broadly, the *Cetacean* court declined to approve standing for animals recognizing the necessity of Congressional intent to do so.

In contrast to *Cetacean*, Appellant cannot cite a single case for the proposition that a monkey can or should have statutory standing to sue under the Copyright Act (or any other piece of federal legislation). To the contrary, its opening brief cites a number of cases noting that copyright protections are intended solely for "persons." (*See, e.g.*, Br. at 8-10 (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is the *person* who translates an idea in a fixed, tangible expression entitled to copyright protection) (emphasis added); *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) (noting that the author of a photograph is the *person* who takes the photo); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1232 (9th Cir. 2000) (same).) This long-standing body of case law was recently reaffirmed by the Seventh Circuit, which held that "[a]uthors of copyrightable works must be *human*; works owning their form to the forces of nature cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 304 (7th Cir. 2011) (emphasis added) (rejecting the copyrightability of a wildflower display because "authorship is an entirely human endeavor," "the law must have some limits," and "not all [ ] art may be copyrighted") (citing 2 William F. Patry, *Patry on Copyright* § 3:19 (2010).)

Likewise, Appellant's argument that copyright jurisprudence has been one of "gradual expansion in the *types of works* accorded protections" is inapposite.

(Br. at 14 (citation omitted) (emphasis added).)  It is certainly true that copyright law has evolved to provide protection to new types of works.  *See, e.g.*, *Burrow-Giles Lithographic*, 111 U.S. at 61 (holding that a photograph is a protectable "writing" for purposes of the Copyright Act). But neither the courts nor Congress (nor the Copyright Office) have expanded who may be considered *authors* of copyright-protected works, much less endorsed Appellant's unsupported proposition that animals may be authors.

To the contrary, in *Urantia Foundation v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997), the Ninth Circuit held that "some element of *human* creativity must have occurred in order for the [work in question] to by copyrightable."  114 F.3d at 958 (emphasis added).  Similarly, in *Kelley*, 635 F.3d at 303-04, the Seventh Circuit found that authorship is one of the "*explicit* constitutional requirements" for copyright protection and that a garden display designed by a prominent artist was not copyrightable as it was not "authored" or "fixed" as required by the Copyright Act.

### C.    The District Court Properly Relied on the *Compendium*

The district court properly relied on the *Compendium of the U.S. Copyright Office Practices* (3d ed. 2014) in making its standing determination.[9]    After

---

[9] The fact that the Monkey Selfies are a "foreign work" (Br. at 22), is irrelevant to the analysis. Indeed, even under the laws of Indonesia, where Naruto allegedly took the photographs in question, authorship is defined in exclusively human

20.

concluding that *Cetecean* applies, and the Copyright Act "plainly" does not extend to animals, the district court noted that its position is supported by the U.S. Copyright Office as expressed in the Compendium. (E.R. at 16.)

The Compendium directly addresses the specific factual scenario presented here. The Compendium states that, "[t]o qualify as a work of 'authorship' a work must be created by a human being. Works that do not satisfy this requirement are not copyrightable." Compendium, § 306. Further, "*a photograph taken by a monkey*" is not eligible for registration under the Copyright Act. *Id.* (emphasis added).

According to the Supreme Court, courts may consider the interpretations set forth in administrative manuals "to the extent that those interpretations have 'the power to persuade.'" *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (internal citations omitted). The Ninth Circuit routinely relies on the Compendium as having such power – a fact which Appellant notably does not dispute. *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d at 1041-42 (9th Cir. 2014) (finding

terms. *See* Law of the Republic of Indonesia, No. 19, *Copyright*, Art. 1 § 2 (2002) ("Author shall mean a *person or several persons* jointly upon whose inspiration a Work is produced, based on the intellectual ability, imagination, dexterity, skill or expertise manifested in a distinctive form and is of a personal nature.") (emphasis added). Additionally, the fact that the Selfies do not require registration as foreign works is equally irrelevant, because as noted in the Order granting dismissal, "the Compendium provides guidance regarding the core, disputed question – whether authorship under the Copyright Act contemplates works created by animals." (E.R. at 17 n.3.)

the Compendium persuasive in determining that the shape of a glass container was not subject to copyright protection); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 684-85 (9th Cir. 2014) (finding the Compendium "persuasive" concerning the registration requirements for databases); *Batjac Prods. Inc. v. Goodtimes Home Video Corp.*, 160 F.3d 1223, 1230 (9th Cir.1998) (deferring to the Compendium).

It is clear from the text of the Compendium that the Copyright Office adequately considered the scope of authorship under the Copyright Act, and unequivocally determined that human authorship is required. Chapter 300 of the Compendium, entitled "Copyrightable Authorship: What Can Be Registered," contains an exhaustive discussion of the authorship requirement. On the topic of human authorship the Copyright Office reasons that:

> The copyright law only protects 'the fruits of intellectual labor' that 'are founded in the creative powers of the mind.' *Trade-Mark Cases*, 100 U.S. 82, 94 (1879). Because copyright law is limited to 'original intellectual conceptions of the author,' the Office will refuse to register a claim if it determines that a human being did not create the work. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884).

Compendium, § 306. While these cases certainly bear on originality (as Appellant argues), they also require an author to be capable of both "intellectual labor…founded in creative powers" and "intellectual conceptions." For the purposes of copyright law, the Copyright Office determined that only humans can

meet this intellectual threshold, and therefore only humans can be authors.  *Id.*  The Compendium's reasoning should be entitled to weight. Appellant's invocation of *Boyds Collection v. Bearington Collection, Inc.* supports this conclusion.   In *Boyds*, the court found that letters by "not a high-level official" at the Copyright Office were not entitled to deference because "[t]he letters are merely responses to individual copyright applications by Bearington and are apparently not intended as policy statements with the force of law."  *Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 662 (M.D. Pa. 2005).   In contrast, the Compendium reflects the views of the U.S. Copyright Office as an entity and "explain[s] the legal rationale and determinations of the U.S. Copyright Office, where applicable, including circumstances where there is no controlling judicial authority."  *Compendium*, Introduction.  The Copyright Office's legal rationale for limiting authorship to humans goes beyond the copyright application responses at issue in *Boyds* and should be given deference in the present case. *See Garcia v. Google, Inc.*, 786 F.3d 733, 741-42 (9th Cir. 2015) ("The Copyright Office's well-reasoned position reflects a body of experience and informed judgment to which courts and litigants may properly resort for guidance.") (internal quotations omitted).

Further, even if as Appellant argues this is a case of first impression, this does not preclude reliance on the Compendium.  *Cf. Horgan v. Macmillan, Inc.*,

789 F.2d 157, 161 (2d Cir. 1986) (citing to the Compendium definition of choreography in a case of first impression). *Bartok v. Boosey & Hawkes, Inc.* does not compel an opposite conclusion. 523 F.2d 941, 947 (2d Cir. 1975). In *Bartok* the court declined to rely on a definition from a Copyright Office Form. *Id.* at 946-47. However, the court goes on to note that, "it is unlikely, when preparing the form, that the Register of Copyrights considered the situation …." *Id.* at n.10. Unlike in *Bartok*, the Copyright Office has clearly considered the present situation given that the Compendium addresses *this exact factual scenario*.

The Copyright Office's position is, moreover, consistent with the Ninth Circuit's holding in *Urantia Foundation v. Maaheraa*, despite the fact that the *Urantia* court chose not to rely on the Compendium. 114 F.3d 955. The *Urantia* court found copyright protection warranted because the relevant work was "at least partially the product of human creativity." As a result, the work "did not belong to that 'narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent.'" *Id.* at 959 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 359 (1991)). The Monkey Selfie belongs to that narrow category of works devoid of *human* creativity. As a result, it falls outside the bounds of copyright protection.

Finally, Appellant's argument that the district court departed from the "well-established norm" that every photograph is entitled to copyright protection by

refusing to extend copyright law to a photo taken by a monkey is simple hyperbole. Requiring human authorship in no way threatens the originality standard invoked by Appellant. Human authorship is simply a prerequisite to an originality inquiry, as evidenced by the Compendium (and the Copyright Act's own plain language). All of Appellant's cases which consider the originality threshold do so for human authored works. *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 248 (1903); *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 935 (D.N.Y. 1921); *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1071 (9th Cir. 2000). Upholding the district court's ruling in no way threatens or lessens the copyright protection afforded to photographs in general. Indeed, these Monkey Selfies are nothing more than a few photographs among the tens of millions taken every day, which because they are taken by humans, still fall under the Copyright Act. There is no floodgate here that will diminish the value or importance of copyrights.

## III. THE COURT SHOULD DISREGARD THE AMICUS BRIEF BY AGUSTIN FUENTES.

The Amicus filed by Agustin Fuentes does nothing to alter the analysis here. If anything, it further underscores the fatal defects in Appellant's argument. First, the appellate courts are not the proper forum for new, evidenced-based, scientific arguments that have not been tested by opposing counsel or considered by the court below. *Cf. Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. Cal. 1999) ("The

ALJ, rather than this Court, was in the optimal position to resolve the conflict between Meanel's new evidence and the statistical evidence provided by the VE.").  Further, Professor Fuentes's brief is in clear tension with PETA's position that all animals are potential authors under the Copyright Act as he suggests that a macaque monkey is different from other animals and engages in behavior more akin to humans than other animals.  The Amicus, moreover, effectively asks this Court to create out of whole cloth a standard from which to evaluate which animals are intellectually capable of authorship and originality sufficient to be "authors" under the Copyright Act.  This sort of legislating and policymaking regarding copyrights is better left to whom it was Constitutionally entrusted: Congress.  The judiciary is ill-equipped to wade into an area that the Copyright Act clearly never contemplated.

# CONCLUSION

For these reasons, Defendant-Appellee Blurb, Inc., respectfully requests that the Court dismiss the appeal for lack of next friend standing and affirm the district court's order of dismissal.

Dated: August 29, 2016

COOLEY LLP

By: /s/ Jessica Valenzuela Santamaria
Attorneys for Defendant-Appellee
Blurb, Inc.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28–2.6, Defendant-Appellee Blurb, Inc., states that

no other cases in this Court are deemed related.

Dated: August 29, 2016                COOLEY LLP

                                      By: /s/ Jessica Valenzuela Santamaria
                                      Attorneys for Defendant-Appellee
                                      Blurb, Inc.

**Form 6.**   **Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)
because:

☒ this brief contains 6,544_____ words, excluding the parts of the brief exempted
by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains_____ lines of text,
excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐ this brief has been prepared in a proportionally spaced typeface using *(state name
and version of word processing program)* _____
*(state font size and name of type style)* _____ *, or*

☒ this brief has been prepared in a monospaced spaced typeface using *(state name
and version of word processing program)* Microsoft Word 2010_____
with *(state number of characters per inch and name of type style)*

14-point Times New Roman_____ .

Signature |/s/ Kyle Wong|

Attorney for |Defendant-Appellee Blurb, Inc.|

Date |29 August 2016|

| 9th Circuit Case Number(s) | 16-15469 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | 29 August 2016 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Kyle Wong |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | |